IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMPASS BANK D/B/A BBVA COMPASS, an Alabama banking corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17-cv-05753 ) |
| JAY ZABEL & ASSOCIATES, LTD., an Illinois corporation, | ) ) ) ) |
| Defendant. | |

## COMPLAINT

Plaintiff Compass Bank d/b/a BBVA Compass (**Compass**) files this complaint against defendant Jay Zabel & Associates, Ltd. (**Zabel**) stating as follows:

## NATURE OF THE CASE

1. This action arises out of Zabel's carelessness in presenting a fraudulent check for payment. In August 2015, Zabel deposited a $385,966.76 counterfeit check into its account at BMO Harris Bank N.A. (**BMO Harris**). The check listed a Compass customer as the drawer and Compass transferred the funds to BMO Harris who deposited the money into Zabel's client trust account. BMO Harris was then instructed by Zabel to wire nearly all of the funds overseas. Compass was notified of the fraud after the funds were transferred overseas and purportedly unable to be recovered. Compass now seeks repayment from Zabel because of its breaches of transfer and presentment warranties under Illinois' adaptation of the Uniform Commercial Code.

42540455;2

## THE PARTIES

2. Compass is an Alabama banking corporation organized and existing under the laws of the State of Alabama. Compass's headquarters is located at 15 South 20th Street, Suite 1802, Birmingham, Alabama 35233.

3. Zabel is an Illinois corporation organized and existing under the laws of the State of Illinois. Zabel's principal place of business is located at 55 West Monroe Street, Suite 3950, Chicago, Illinois 60603.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and Compass and Zabel are citizens of Alabama and Illinois respectively.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Zabel resides in the Northern District of Illinois and a substantial part of the events giving rise to this action occurred within the district.

## FACTUAL ALLEGATIONS

6. Zabel is a six-attorney, Chicago-based law firm specializing in tax law, income tax preparation, estate planning and real estate transactions.

7. Zabel does not specialize in international sales transactions or have any experience representing entities in the sale of construction or excavation equipment.

8. Notwithstanding its lack of expertise, on or about July 30, 2015, Zabel was referred a matter in which it was to represent Sinochem Group, a Chinese conglomerate with holdings in the energy, chemical, agricultural, real estate and financial industries. The

transaction entailed the sale of a dredger to Clune Construction Company (**Clune**), a national construction management company.

9. A dredger is an expensive piece of heavy equipment generally used to excavate sediments located at the bottom of bodies of water.

10. Zabel's perspective engagement included representing Sinochem's interests in the negotiation and sale of the dredger to Clune and the preparation of a purchase agreement.

11. Zabel communicated directly with individuals claiming to be Sinochem representatives. Zabel, however, conducted no due diligence to determine whether the "representatives" were actually associated with Sinochem or authorized to retain the law firm.

12. Zabel and the Sinochem "representatives" discussed and ultimately agreed on the scope of representation and Zabel's billing rate. Although Zabel drafted and circulated an engagement letter as part of its normal practice, Sinochem never executed it.

13. In an effort to draft a purchase agreement, Zabel asked the Sinochem "representatives" for a number of documents relating to the sale including a term sheet, memorandum of understanding, evidence of title, equipment specifications, and a letter of intent.

14. The Sinochem "representatives" did not provide any of the requested documentation or information setting forth the material terms of the transaction, except for a preferred purchase price.

15. Zabel did not endeavor to independently verify the dredger's existence, ownership, or title information.

16. Despite the lack of a draft purchase agreement, on or about August 10, 2015, a Sinochem "representative" informed Zabel a partial payment was to be made on the dredger.

17. Zabel was told Clune would provide the partial payment to Zabel, who would in turn deduct its retainer fee of $2,500.00 and forward the balance to Sinochem.

18. Zabel agreed to this arrangement including deducting its $2,500.00 retainer from the payment even though it considered this to be unusual.

19. Zabel then received a check in the amount of $385,966.76. The check was dated August 17, 2015 and made payable to Zabel. The memo line states "Clune Construction Company."

20. The check maker is M/I Title, LLC, Escrow Account, 10920 West Sam Houston Parkway North, Houston, Texas 77064. Two signatures appear on the check. The center of the check lists Compass as the bank where the escrow account is maintained.

21. Zabel reviewed the check and recognized it was made by M/I Title, a company having no involvement in the transaction.

22. Neither Sinochem nor Clune referenced M/I Title prior to Zabel's receipt of the check and Zabel did not contemporaneously receive any correspondence with the check explaining M/I Title's relationship to any party.

23. Zabel did not ask Sinochem or Clune about M/I Title's role in the transaction or independently authenticate the check.

24. In fact, Zabel has no practices or procedures regarding the authentication of checks it receives.

25. Zabel nevertheless indorsed the check and deposited it into its client trust account at BMO Harris on the same day it was received.

26. BMO Harris sent the check through the automated clearing house system to obtain payment.

27. Compass received the check and sent $385,966.76 to BMO Harris from M/I Title's account. Compass paid the check in good faith and in accordance with reasonable commercial standards.

28. Upon receipt, BMO Harris deposited the $385,966.76 into Zabel's client trust account.

29. Immediately after the funds were deposited, Sinochem instructed Zabel to wire the money overseas.

30. From August 17, 2015 through September 17, 2015, Zabel provided BMO Harris with several sets of wiring instructions. Wires were rejected by intermediary and beneficiary banks and each subsequent set of instructions had a different beneficiary account and account holder.

31. Zabel did not conduct any due diligence regarding the beneficiary accounts or account holders.

32. Eventually, BMO Harris successfully made two wires. One for $287,000.00 and the other for $96,000.00 to two accounts in Hong Kong and Japan. Sinochem was not listed as the account holder on either wire.

33. Zabel also withdrew its $2,500.00 retainer and kept the remaining funds in its client trust account.

34. In September 2015, M/I Title discovered its Compass account had been debited in the amount of $385,966.76 and the funds paid to Zabel. M/I Title immediately contacted Zabel explaining the check was counterfeit.

35. The counterfeit check was also reported to the Chicago police department and the Federal Bureau of Investigation.

36. M/I Title also reported the fraudulent check to Compass. M/I Title informed Compass it did not write the check, execute the signatures or authorize payment to Zabel.

37. Compass credited M/I Title $385,966.76 for the fraudulent check and demanded Zabel repay the money.

38. To date, Zabel has only returned roughly $2,900.00 to Compass representing the money it kept for its $2,500.00 retainer fee and the remaining few hundred dollars not wired overseas.

39. Despite Compass's demands, Zabel refuses to reimburse Compass for the remaining amount of the check claiming it was Compass's responsibility to have discovered the counterfeit check.

40. Regardless of Zabel's claim, Zabel has an obligation to reimburse Compass for the full amount of the fraudulent check.

41. Zabel's unlawful refusal to make Compass whole forced Compass to retain the undersigned attorneys and incur attorneys' fees pursuing the debt.

## COUNT I
## Breach of Transfer Warranties 810 ILCS §§ 5/3-416

42. Compass realleges and incorporates by reference paragraphs 1-41 of the Complaint as if fully set forth herein.

43. Zabel made a number of transfer warranties when it indorsed the check, deposited it with BMO Harris and sought payment of the same.

44. 810 ILCS § 5/4-207 provides, in pertinent part:

   (a)   A person who transfers an instrument for consideration warrants to the transferee and, if the transfer is by indorsement, to any subsequent transferee that:

        1. The warrantor is a person entitled to enforce the instrument;

      2. All signatures on the instrument are authentic and authorized;

      3. The instrument has not been altered . . .

  (b)  A person to whom the warranties under subsection (a) are made and who took the instrument in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the instrument plus expenses and loss of interest incurred as a result of the breach.

  (c)  The warranties stated in subsection (a) cannot be disclaimed with respect to checks.

45. Zabel specifically warranted to Compass it was entitled to enforce the check, the signatures were authentic and authorized, and the check had not been altered.

46. Compass settled the check by providing the full amount of the proceeds in good faith and in accordance with reasonable commercial practices.

47. The check was actually counterfeit because the maker, M/I Title, neither signed the check nor authorized its payment.

48. Zabel breached the transfer warranties by presenting the fraudulent check because it was not entitled to deposit it, the signatures were inauthentic and unauthorized and the check was a forgery.

49. Zabel is liable to Compass for its various breaches of the transfer warranties for an amount equal to the amount paid on the check, $385,966.76 minus the amount already returned, plus expenses, loss of interest, and attorneys' fees.

## COUNT II
### Breach of Presentment Warranties 810 ILCS §§ 5/3-417

50. Compass realleges and incorporates by reference paragraphs 1-49 of the Complaint as if fully set forth herein.

51. Zabel made a number of presentment warranties when it presented the check for payment.

52. 810 ILCS §§ 5/§§ 5/3-417 provides, in pertinent part:

   (a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee making payment or accepting the draft in good faith that:

   1. The warrantor is or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;

   2. The draft has not been altered; and;

   3. The warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.

   (b) A drawee making payment may recover from any warrantor damages for breach of warranty equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment. In addition the drawee is entitled to compensation for expenses and loss of interest resulting from the breach . . . If the acceptor makes payment with respect to the draft, the acceptor is entitled to recover from any warrantor for breach of warranty the amounts stated in this subsection . . .

   (e) The warranties stated in subsections (a) and (d) cannot be disclaimed with respect to checks.

53. Zabel specifically warranted to Compass it was authorized to obtain payment, the check had not been altered, and it had no knowledge of unauthorized signatures.

54. Compass settled the check by providing the full amount of the proceeds in good faith and in accordance with reasonable commercial practices.

55. The check was actually counterfeit because the maker, M/I Title, neither signed the check nor authorized its payment.

56. Zabel breached the presentment warranties by presenting the fraudulent check because it was not authorized to obtain payment and the check was a forgery.

57. Zabel also either knew or should have known the signatures were unauthorized given the suspicious nature of the transaction and the fact M/I Title was not a party to the transaction.

58. Zabel is liable to Compass for its various breaches of the presentment warranties for an amount equal to the amount paid on the check, $385,966.76 minus the amount already returned, plus expenses, loss of interest, and attorneys' fees.

**PRAYER FOR RELIEF**

Wherefore, Compass Bank d/b/a BBVA Compass prays for a judgment in its favor and against Jay Zabel & Associates, Ltd. for breach of presentment and transfer warranties in the amount of $385,966.76 minus the amount already returned, plus expenses, interest and attorneys' fees, as well as all other relief this Court deems just and proper.

Dated: August 8, 2017

By: */s/ Stanley C. Ball*
Melissa E. Manning, Esq.
melissa.manning@akerman.com
Stanley C. Ball, Esq.
stanley.ball@akerman.com
Akerman LLP
71 South Wacker Drive, 46th Floor
Chicago, Illinois 60606
(T) 312-634-5700
(F) 312-424-1900

*Counsel for Plaintiff Compass Bank d/b/a BBVA Compass*